IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JAN-MICHAEL WEINBERG,                    )
                                         )
              Plaintiff,                 )
                                         )
       v.                                )        No. 1:16-cv-110 (LMB/TCB)
                                         )
JPMORGAN CHASE & CO., et al.,            )
                                         )
              Defendants.                )

MEMORANDUM OPINION

On January 13, 2016, plaintiff, acting pro se, filed a complaint in the Circuit Court of

Fairfax County to enforce a mechanic's lien that plaintiff had filed against a five-acre property

located at 12792 Yates Ford Road, Clifton, Virginia ("the Property") on April 26, 2013[1] and had

refiled on October 13, 2015. See Compl. [Dkt. No. 1-1] ¶¶ 6-10. Plaintiff named multiple

defendants in his complaint, including JPMorgan Chase & Co., which defendants state should be

correctly identified as JPMorgan Chase Bank, N.A. ("Chase"); Jamie Dimon, personally and as a

Director; Linda B. Bammann, personally and as a Director; James A. Bell, personally and as a

Director; Crandall C. Bowles, personally and as a Director; Stephen B. Burke, personally and as

a Director; James S. Crown, personally and as a Director; Timothy P. Flynn, personally and as a

Director; Laban P. Jackson, Jr., personally and as a director; Michael A. Neal, personally and as

a director; Lee R. Raymond, personally and as a Director; and William C. Weldon, personally

and as a Director (collectively, "defendants").

Defendants, all of whom are diverse from plaintiff, a Virginia resident, removed the

---

[1] Plaintiff's complaint states that his first lien was "[f]iled on [sic] recorded at the Government
Center of Fairfax Virginia on 05/05/2013," Compl. ¶ 10; however, the date marked on the lien
memorandum is April 26, 2013, and that is the date to which the Court will refer. See Am.
Compl., Pl.'s Ex. 2 [Dkt. No. 7-3], Pl.'s Liens ("Pl.'s Ex. 2").

complaint to this court and filed a motion to dismiss. Notice of Removal [Dkt. No. 1], Feb. 4,

2016; Defs.' Mot. to Dismiss Pl.'s Compl. to Enforce Mechanic's Lien [Dkt. No. 3], Feb. 9,

2016. Responding to defendants' motion to dismiss, plaintiff filed an 82-page amended

complaint as well as an opposition to the motion to dismiss. Am. Compl. [Dkt. No. 7], Feb. 24,

2016; Pl.'s Mem. in Supp. of Opp'n to Def.'s Mot. to Dismiss [Dkt. No. 9] ("Pl.'s Opp'n"), Feb.

24, 2016. Defendants withdrew their original motion to dismiss, Notice [Dkt. No. 10], Mar. 1,

2016, and filed a new motion to dismiss plaintiff's amended complaint. Defs.' Mot. to Dismiss

Pl.'s Am. Compl. [Dkt. No. 19], Mar. 11, 2016.

The essence of plaintiff's claim as expressed in both his original and amended complaints

is that from 2007 through 2015 he performed various work worth $195,000 on the Property,

which was owned by James High III and Ann High.[2] Compl. ¶¶ 7-8; Compl. at 7; Am. Compl.

¶¶ 103-105. By inference, he appears to allege that the Highs did not pay for his services, which

led him to file the first mechanic's lien on the Property on April 26, 2013. It also appears that by

2013 the Highs were having problems paying the mortgage on the Property. See Pl.'s Ex. 5 [Dkt.

No. 9-7], Combined Emergency Mot. for TRO or Prelim. Inj., Mot. to Stay Sale, & Mot. to

Allow Counterclaim. The Property went into foreclosure proceedings in 2015 and defendant

Chase eventually purchased the Property for $1.4 million. Compl. ¶ 13; Defs.' Ex. 1 [Dkt. No.

20-1], Deed of Foreclosure. Plaintiff claims that defendants failed to provide him with proper

notice of the foreclosure, Compl. ¶¶ 13-14; Am. Compl. ¶¶ 46-47, and in his lawsuit he seeks

$195,000 based on the mechanic's lien, with interest running from May 5, 2013, the date on

which he believes his first lien was recorded. Compl. at 7.

---

[2] Even though Ann High died on August 27, 2012, plaintiff continued to list her as an owner on both the 2013 and 2015 liens. James High is now also deceased. See Am. Compl. ¶ 7B.

In plaintiff's amended complaint he attempts to also raise a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO") against defendants, alleging that Chase has been fined $30 billion as a result of various federal agencies' actions and that defendants have engaged in a pattern of racketeering to defraud him out of the $195,000 he is owed for maintaining and improving the Property.[3] See Am. Compl. ¶¶ 6-7. As a result, he is "claiming . . . partial ownership of the property." Id. ¶ 7.[4]

In their motions to dismiss plaintiff's original and amended complaints, defendants raise multiple meritorious grounds for dismissal pursuant to Federal Rule of Civil Procedure 12(b), including lack of personal jurisdiction under Rule 12(b)(2), insufficient process under Rule 12(b)(4), insufficient service of process under Rule 12(b)(5), and "failure to state a claim upon which relief can be granted" under Rule 12(b)(6). Defs.' Mem. in Supp. of Their Mot. to Dismiss Pl.'s Am. Compl. [Dkt. No. 20] ("Defs.' Br. 2") at 1-3, Mar. 11, 2016; Defs.' Mem. in Supp. of Their Mot. to Dismiss Pl.'s Compl. to Enforce Mechanics [sic] Lien [Dkt. No. 4] ("Defs.' Br. 1") at 1-2, Feb. 9, 2016. Pursuant to Federal Rule 12(f), defendants also move to strike a number of plaintiff's exhibits and any claim he raises related to the U.S. Department of Justice's "Petite Policy." Defs.' Br. 2 at 3; see also Am. Compl. ¶ 8 (alleging that the Petite Policy should apply but stating that "Petite is not the Plaintiffs [sic] right but the right of [sic] DOJ/Court"). Neither

---

[3] Plaintiff referenced RICO in his original complaint and stated that he intended to bring these additional claims at a later date but he alleges that "The Defendants jumped the fun [sic]" by removing this action in order to "preempt" him from doing so. Am. Compl. ¶¶ 66-67.

[4] Plaintiff also repeatedly references the caption of the case and asserts that defendants improperly changed the caption by correcting the name of defendant Chase and by using the caption "JPMorgan Chase & Co., et al." instead of listing all of the named defendants. See, e.g., Am. Compl. ¶ 108. As the Court has previously informed the plaintiff, this conduct is not sanctionable, see Order [Dkt. No. 16], Mar. 7, 2016, and it is not improper to condense a case caption using "et al.," as the Court has done in this Memorandum Opinion and accompanying Order.

plaintiff's amended complaint nor his memorandum opposing the first motion to dismiss allege

any facts or make any arguments that properly respond to the dispositive issues raised in

defendants' motions. Because defendants' Rule 12(b)(6) argument is the most substantial and is

determinative of this action, it is the only one the Court needs to address.

      A court addressing a Rule 12(b)(6) motion must dismiss a complaint if it fails "to state a

claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to

dismiss, a complaint must set forth sufficient factual matter, accepted as true, to 'state a claim for

relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell

Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007)). In assessing the plausibility of a claim, a

court must take the plaintiff's alleged facts to be true and must draw all reasonable inferences in

the plaintiff's favor; however, the allegations must be more than "unadorned, the-defendant-

unlawfully-harmed-me accusation[s]." Id. "Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice," id., nor do "naked assertions

devoid of further factual enhancement." Twombly, 550 U.S. at 557. If "the well-pleaded facts do

not permit the court to infer more than the mere possibility of misconduct, the complaint has

alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679

(quoting Fed. R. Civ. P. 8(a)(2)).

      Defendants correctly argue that they were under no obligation to notify plaintiff about the

foreclosure sale and have no liability for the $195,000 because plaintiff never had a valid

mechanic's lien on the Property. Although, as defendants recognize, persons who perform labor

or furnish at least $150 in materials for the construction, removal, repair or improvement of any

permanently annexed building or structure may have a lien on that building or structure, Va.

Code. Ann. § 43-3(A), there are strict statutory requirements that must be followed to obtain a

perfected and enforceable lien. See Carolina Builders Corp. v. Cenit Equity Co., 512 S.E.2d 550,

552 (Va. 1999) ("This Court has repeatedly stated that a mechanic's lien is in derogation of the

common law and that the statutes dealing with the existence and perfection of a mechanic's lien

must, therefore, be strictly construed."). For example, the types of structures and materials that

are "deemed permanently annexed to [a] freehold" are defined by statute,[5] and the term

"improvement" as used by Va. Code Ann. § 43-3(A) has been interpreted to mean that "materials

need not be fixed and irremovable…[but] some greater connection to the building or structure is

necessary in order to sustain a mechanics' lien" and therefore "it is not sufficient for materials to

simply add value to a building by their mere presence without any further connection to the

building." See Summit Cmty. Bank v. Blue Ridge Shadows Hotel & Conference Ctr., LLC, 428

B.R. 231, 233-34 (W.D. Va. 2010).

Defendants contend that the types of work listed in plaintiff's lien memoranda do not

constitute construction, removal, repair, or improvement of any permanently annexed structure

or building and therefore do not provide the basis for a mechanic's lien.[6] Defendants are correct

---

[5] Pursuant to Va. Code Ann. § 43-2, "a well, excavation, sidewalk, driveway, pavement, parking lot, retaining wall, curb and/or gutter, breakwater (either salt or fresh water), underground or field-constructed above-ground storage tank and connected dispensing equipment, water system, drainage structure, filtering system (including septic or waste disposal systems) or swimming pool shall be deemed a permanent structure permanently annexed to the freehold, and all shrubbery, earth, sod, sand, gravel, brick, stone, tile, pipe or other materials, together with the reasonable rental or use value of equipment and any surveying, grading, clearing or earth moving required for the improvement of the grounds upon which such building or structure is situated shall be deemed to be materials furnished for the improvement of such building or structure and permanently annexed to the freehold."

[6] Defendants overstate the holding in Summit Community Bank v. Blue Ridge Shadows Hotel & Conference Center, LLC, 428 B.R. 231 (W.D. Va. 2010). The Summit Community court did not expressly find that materials used must be physically annexed to a building to be lienable, contra Defs.' Br. 2 at 16, but instead stated that construction, removal, or repair "each results in a change to the actual building" and that "construction and repair" are "activities more akin to

5

that much of plaintiff's claimed labor and materials, such as "grass, shrub, flower care," "weed killer," "tree removal/cutting," and "general property cleanup," Am. Compl., Pl.'s Ex. 2 [Dkt. No. 7-3], Pl.'s Liens ("Pl.'s Ex. 2"), do not appear to fall within the category of lienable items, and plaintiff's descriptions as a whole are too vague to determine whether any of the listed items are lienable. Even presuming that some of plaintiff's requested labor and material costs could support a mechanic's lien, his 2013 and 2015 liens are nonetheless defective.

Among the many other defects defendants discuss in their motions to dismiss is the requirement that a lien claimant file his memorandum of lien no later than 90 days from the last day of the month in which he last performed labor on the building or structure or supplied the materials at issue or "in no event later than 90 days from the time" the building or structure or work on the building or structure is completed. Va. Code Ann. § 43-4; see also Smith Mountain Bldg. Supply, LLC v. Windstar Properties, LLC, 672 S.E.2d 845, 847 (Va. 2009) (confirming that the requirements under § 43-4 are "statutory prerequisites[s] to perfect a mechanic's lien"). Although a lien may include an unlimited number of memoranda, any memorandum filed is limited to seeking "sums due for labor or materials furnished" within 150 days of the last day on which the lien-holder performed labor or furnished materials. Va. Code Ann. § 43-4. Plaintiff fails in both his 2013 and 2015 lien memoranda to make clear the dates of the work he purportedly performed or the dates on which he furnished materials. See Pl.'s Ex. 2. This omission renders both liens deficient on their face, as there is no way to verify that the memoranda were filed no later than 90 days from when plaintiff completed his work on the

---

improvement than removal, [meaning that] the materials used often become a constituent part of the building." Summit Cmty., 428 B.R. at 233. The court reasoned that in "this context, it would appear that the statute requires a greater connection between the materials furnished…and the building or structure itself." Id.

Property or furnished materials for that work.

Moreover, even if the 2013 lien had been filed within the 90-day timeframe and was therefore properly perfected, it is unenforceable because under Virginia law a lien holder may not bring a suit to enforce a perfected lien if more than six months have elapsed since the time that the lien holder recorded the lien memorandum or if more than sixty days have passed from the time the building or structure was completed, whichever is later. See Va. Code Ann. § 43-17. The record clearly shows that plaintiff did not seek to enforce the 2013 lien within the six months after recording the lien. In fact, plaintiff's first and only attempt to enforce the 2013 lien was on January 13, 2016, when he filed this civil action. Plaintiff's suit is therefore untimely with respect to his 2013 lien.

Defendants further argue that plaintiff is judicially estopped from claiming that he is owed $195,000 because he failed to list the 2013 lien as an asset on his Chapter 7 bankruptcy petition, which was filed on September 18, 2013, nearly five months after he filed his first mechanic's lien on April 26, 2013. See Defs.' Br. 2, Ex. B [Dkt. No. 20-2], Voluntary Pet. ("Bankr. Pet."). The doctrine of judicial estoppel bars "a party from adopting a position that is inconsistent with a stance taken in prior litigation," and serves to "prevent a party 'from playing 'fast and loose' with the courts," while "'protect[ing] the essential integrity of the judicial process.'" John S. Clark Co. v. Faggert & Frieden, P.C., 65 F.3d 26, 28-29 (4th Cir. 1995) (quoting Allen v. Zurich Ins. Co., 667 F.2d 1162, 1166 (4th Cir. 1982)). To determine if judicial estoppel applies to a party's position, a court should consider whether the party "'intentionally misled the court to gain unfair advantage'" or whether its "prior position was based on inadvertence or mistake." Id. at 29 (quoting Tenneco Chemicals v. William Burnett & Co., 691 F.2d 658, 665 (4th Cir. 1982)).

Here, plaintiff had an obligation "to disclose to the bankruptcy court all of the assets to which creditors could post a claim, and 'the importance of full and honest disclosure cannot be overstated.'" RTC Mortg. Trust 1995-S/N2 v. McMahon, 225 B.R. 604, 608-09 (E.D. Va. 1997) (quoting Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 362 (3d Cir. 1996)). Plaintiff, who was represented by counsel in his Chapter 7 proceeding, did not disclose the 2013 mechanic's lien or any claims against the Property and the Highs as an asset, see Bankr. Pet. at 9-11, 27,[7] and there is no indication that this omission was the product of "inadvertence or mistake," particularly because plaintiff had filed his mechanic's lien memorandum just five months before filing his voluntary petition. He did not file for bankruptcy and later discover what he believes to be a right to a mechanic's lien; rather, he had asserted rights to such a lien for months before filing for bankruptcy. To permit plaintiff now to recover on a lien that was not listed as an asset in bankruptcy would allow plaintiff to gain an "unfair advantage" by misleading the bankruptcy court.

Furthermore, it is obvious that the 2015 mechanic's lien is a duplicate of the 2013 lien and that the 2015 lien is therefore untimely as well. The lien memoranda are indistinguishable other than the date on which they were signed by plaintiff.[8] See Pl.'s Ex. 2. Additionally, plaintiff admits in his amended complaint that "a Mechanics [sic] Lien was filed twice in Circuit Court of Virginia where the [sic] ALL The defendants refuse [sic] to pay." Am. Compl. ¶ 112.

---

[7] Specifically, plaintiff does not list anything related to the lien under "accounts receivable," Bankr. Pet. at 11, nor does he list anything related to the Property under "Suits and administrative proceedings, executions, garnishments and attachments." Id. at 27.

[8] Defendants state that because "the first pages of both documents have the same recordation number, 'BK 23109 0882' on the top left corner," the 2015 memorandum appears to be "a reproduction of the 2013 Memorandum with 'JP Morgan, Chase & Co.' simply inserted on the 'Name of Owner' line." Defs.' Br. 2 at 17 n.10.

Accordingly, plaintiff appears to refer to a single mechanic's lien that he filed twice, rather than to two separate liens that would be separately enforceable. Similarly, plaintiff's opposition to defendants' first motion to dismiss states that he "filed a 2nd Lien against the Defendants, the new property owner [sic] in fact on October 13, 2015 to continue to enforce his rights per Mechanics [sic] Lien law and statue [sic] of State of Virginia." Pl.'s Opp'n at 8. Plaintiff therefore characterizes his 2015 lien as a continuation of his effort to enforce his 2013 lien rather than as a partly or wholly separate claim. This interpretation is supported by plaintiff's listing on both the 2013 and 2015 lien memoranda July 2007 as the "[d]ate from which interest on the [lien] is claimed." By referencing July 2007 as the relevant date on which interest began accruing for both liens, plaintiff indicates that he is seeking the same lien for the same work performed during the same period of time.

Even if the 2015 lien included work that was performed after 2013, because there is no itemization of the work performed and it so clearly includes work performed between 2007 and 2013, none of which is recoverable, the lien is not legally sufficient. Moreover, plaintiff requests the same amount in both liens, further supporting the conclusion that no work was performed after the work valued at $195,000, all of which he claimed in the 2013 lien. Because the 2015 lien does not distinguish any new work after the 2013 lien was filed, it is time-barred.

Defendants also properly argue that plaintiff appears to have violated Virginia's requirement that anyone involved in managing construction, removal, repair or improvements be a licensed contractor. Defs.' Br. 1 at 13 (citing Va. Code Ann. § 54.1-1100[9]). Indeed, both lien

---

[9] Va. Code Ann. § 54.1-1100 defines a "Contractor" as "any person, that for a fixed price, commission, fee, or percentage undertakes to bid upon, or accepts, or offers to accept, orders or contracts for performing, managing, or superintending in whole or in part, the construction, removal, repair or improvement of any building or structure permanently annexed to real

...

memoranda are titled "Memorandum for Mechanic's Lien Claimed By General Contractor Under Virginia Code § 43-5," Pl.'s Ex. 2, and plaintiff's claim for a mechanic's lien in the amount of $195,000 would likely make him a "Class A contractor[]" under Virginia law. See Va. Code. Ann. § 54.1-1100 (defining "Class A contractors" as those whose work on a single contract or project is worth $120,000 or more or whose total work over a 12-month period is worth $750,000 or more).

Nonetheless, plaintiff does not allege or provide any evidence demonstrating that he had a contractor's license when he performed the work on the Property. Instead, plaintiff hand-wrote on the copy of the 2015 lien submitted with his original complaint: "no license required." Notice of Removal, Defs.' Ex. A [Dkt. No. 1-1] at 14. Plaintiff does not elaborate as to why he believes no license was required to obtain the lien, and this copy of the 2015 lien memorandum raises doubts about the reliability of plaintiff's submissions to the court, because the "no license required" language is not found on any of the other copies of the 2015 memorandum submitted to the court. Additionally, plaintiff's bankruptcy petition does not list any income from work as a contractor and instead refers only to income from a consulting company. Bankr. Pet. at 31. Accordingly, plaintiff fails to show that he is a licensed contractor entitled to a mechanic's lien or that no license is required for the type of lien he seeks.

Finally, even if one or both of plaintiff's mechanic's liens were enforceable, defendants were under no obligation to provide notice to plaintiff before foreclosing on the Property. Defendants correctly argue, Defs.' Br. 2 at 25-26, that holders of mechanic's liens are not

---

property owned, controlled, or leased by him or another person or any other improvements to such real property." Accordingly, any person seeking a mechanic's lien, which is only available for labor and materials related to "the construction, removal, repair or improvement of any building or structure permanently annexed to the freehold," Va. Code Ann. § 43-3(A), must also be a "contractor" as defined by Virginia law.

entitled to receive notice before a foreclosure sale. <u>See</u> Va. Code Ann. § 55-59.1 (requiring that notice be given before sale to "(i) the present owner of the property to be sold,…(ii) any subordinate lienholder who holds a note against the property secured by a deed of trust…, (iii) any assignee of such a note secured by a deed of trust…, (iv) any condominium unit owners' association which has filed a lien pursuant to § 55-79.84, (v) any property owners' association which has filed a lien pursuant to § 55-516, and (vi) any proprietary lessees' association which has filed a lien pursuant to § 55-472"). Accordingly, not only does plaintiff lack any interest in the foreclosure sale conducted by defendants, but defendants did not act improperly by not notifying plaintiff of the sale.

Although defendants' initial motion to dismiss put plaintiff on notice as to the many legal insufficiencies in his liens, he failed in his opposition to that motion to point to any facts defeating defendants' arguments. For example, he made no effort to provide the dates for the work he allegedly performed or any evidence as to the precise nature and valuation of the services he supplied, instead relying again on vague generalizations about his work "compris[ing] mostly, [sic] infrastructure work, large dead tree removal, planting grass each year for 9 years, drainage, site work, General Household work, as well as regular maintaining, assisting homeowner as requested and handy man jobs." Pl.'s Opp'n, Pl.'s Ex. 13 [Dkt. No. 9-10], Aff. of Jan-Michael Weinberg ("Weinberg Aff.") at 1. As discussed above, although some of this work might be lienable, plaintiff's description is not precise enough to form the basis for a valid mechanic's lien.

Similarly, plaintiff's only response to the judicial estoppel argument was that he did not include the mechanics lien in his bankruptcy filing because "[c]ounsel represented [him] in [his] bankruptcy and [counsel] determined the same set of facts and value, [sic] [plaintiff] did." <u>Id.</u> at

11

6. Plaintiff also appears to argue that his lien "needed to be made into a judgment to have any value and [sic] have more power of enforcement" before he had to list it in bankruptcy. Id. That response is insufficient to excuse not including the $195,000 as at least an account receivable, and it also appears to show that plaintiff understood the difference between filing a lien and timely perfecting and enforcing it.

Plaintiff's RICO claims also fail, because they are premised either on his deficient mechanic's lien claims or on vague claims regarding other alleged wrongs committed by defendants in other states and against other parties. See, e.g., Am. Compl. ¶¶ 2-6. Plaintiff claims that the defendants' "predicate acts" involved "defraud[ing] the Plaintiff from [sic] his Mechanic [sic] Liens" as well as other activities related to the foreclosure on the Property. Id. ¶ 4. As discussed above, plaintiff does not possess an enforceable mechanic's lien and defendants did not act improperly in foreclosing on the Property without providing notice to plaintiff and do not act improperly now by refusing to pay the $195,000 plaintiff demands. Therefore, these acts cannot serve as "predicate acts" for a RICO claim. Plaintiff also alleges that defendants committed mail fraud by sending him letters containing misrepresentations "to trick" him. Am. Compl. ¶ 7B. The letters sent by defendants to plaintiff contain only defendants' explanation of why plaintiff's mechanic's liens are not enforceable, and therefore, as this opinion has discussed, they constitute accurate representations of the law. See Am. Compl., Pl.'s Ex. 11 [Dkt. No. 7-12], Correspondence. The other documents provided by plaintiff as "a sampling of their wrongful acts," Am. Compl. ¶ 7B, are completely irrelevant to this action. See Am. Compl., Pl.'s Ex. 1 [Dkt. Nos. 7-1, 7-2], Informational Precedent. Any other wrongful acts plaintiff believes defendants to have committed are beyond the scope of this civil action. Accordingly, plaintiff's

RICO claims fail and will be dismissed.[10]

Finally, since filing his amended complaint on March 3, 2016, plaintiff filed a Motion to Amend [His] First Amended Complaint [Dkt. No. 13], Mar. 3, 2016. Even though he failed to attach the proposed new complaint, his description of what it would include shows that none of the proposed amendments would have any merit. The bottom line is that none of plaintiff's allegations against the defendants have legal merit. Under Virginia law, contrary to plaintiff's allegations, a mortgage holder is not required to notify persons with mechanic's liens of plans to foreclose on a property. Moreover, as discussed above, neither the 2013 nor 2015 lien is enforceable. Because plaintiff's suit is premised entirely on untenable claims regarding his mechanic's liens and other purportedly wrongful conduct by defendants, it will be dismissed.

## CONCLUSION

For all these reasons, plaintiff's Motion to Amend [Dkt. No. 13] will be denied and defendants' Motion to Dismiss [Dkt. No. 19] will be granted by an Order to be issued with this Memorandum Opinion.

Entered this 15 day of March, 2016.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge

---

[10] Although plaintiff has not yet responded to defendants' renewed motion to dismiss, the response he filed to the first motion to dismiss and his multiple meritless pleadings filed since clearly show that any response would be futile. To prevent further unnecessary pleadings in this civil action, defendants' renewed motion to dismiss has been resolved without considering any response from plaintiff.

13